UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MARY ANNE SIMS, )
 )
    Plaintiff, )
 )
vs. ) Civil Action No. CV96-S-2251-NE
 )
MORGAN COUNTY COMMISSION, )
 )
    Defendant. )

## MEMORANDUM OPINION

Mary Anne Sims alleges that the Morgan County Commission engaged in gender-based wage discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. The action presently is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, evidentiary submissions, oral arguments of counsel, and rulings on the parties' various motions to strike,[1] the motion is due to be granted.

### I. STATEMENT OF FACTS

Plaintiff alleges she was paid less than a comparable male employee with less experience and seniority than herself. She initially was hired by the Morgan County, Alabama Emergency Management Agency ("MCEMA") in 1974 as a clerk-typist. Her salary was paid with federal funds provided to MCEMA under the Comprehensive Employment Training Act. Two years later, when such CETA funds were no longer available, MCEMA retained plaintiff as a regular county employee. (Plaintiff's deposition at 11, 26.) She

---

[1]See the Order entered November 13, 1997: Document No. 34.

was promoted to the position of deputy director on January 11, 1980. (Plaintiff's deposition at 50, 69-70; Dockery affidavit at 3.)

In 1987, the position of "Local Emergency Planner" was created within MCEMA and funded through the "Radiological Emergency Planner Program," a project of the Tennessee Valley Authority. (Dockery affidavit at 4; Keeney affidavit at 1.) The primary purpose of that position was to perform "off-site planning" in the event of an accidental release of radiation from one of the reactors at TVA's Brown's Ferry Nuclear Power Plant. (Plaintiff's deposition at 82; Keeney affidavit at 1-2.) MCEMA hired Fred Keeney for that position on or about August 10, 1987. (Dockery affidavit at 4; Keeney affidavit at 3.) Mary Anne Sims alleges her position as deputy director of MCEMA was similar to Keeney's, but she was paid less because of her gender.

The evidence establishes, however, that the method of funding plaintiff's deputy director position was different from Keeney's local emergency planner position. As a deputy director of MCEMA, plaintiff was paid with funds flowing from three sources: the State of Alabama (including some federal tax revenues reimbursed to the State); the Morgan County, Alabama Commission; and, the City of Decatur, Alabama. (Plaintiff's deposition at 41-42; Dockery affidavit at 3.) The funding for Keeney's local emergency planner position, on the other hand, came from none of those sources, but was provided exclusively by the Tennessee Valley Authority. (Dockery affidavit at 4; Keeney affidavit at 2.)

2

The disparate sources of funding resulted in different methods for establishing the annual salary of each position. Until December of 1993, the salaries of employees of county emergency management agencies were regulated by the State of Alabama Personnel Department under a contract between the State and the various county agencies. Thus, plaintiff was subject to the State of Alabama Merit System, and her salary was regulated by the State of Alabama Personnel Department. (Plaintiff's deposition at 30-33; Dockery affidavit at 3.) Under the state merit system, maximum and minimum salaries with intervening (or step level) increases were established for plaintiff's position. Salary ranges were adjusted periodically to reflect changes in the cost of living; otherwise, a typical raise consisted of an increase of one step level. (Dockery affidavit at 3.) In December of 1993, however, the State Personnel Department ceased providing services for MCEMA, and employees of that agency were thereafter placed under the Morgan County merit system at step levels comparable to those previously occupied under the state system. (*Id.* at 5.)

In contrast, Keeney's local emergency planner position was never subject to the State merit system and, thus, not subject to the same salary constraints as plaintiff's position. Indeed, on March 2, 1989, the State of Alabama Personnel Department found that local emergency planners could not be considered part of the merit system, because of the State's lack of authority to audit TVA funds from which compensation for those positions was paid. (Keeney affidavit exhibit 2.) Furthermore, questions were raised in March

3

of 1993 concerning the fact that Keeney's salary was greater than allowed by the State merit system. (Keeney affidavit at 5.) A ruling was requested from the State of Alabama Personnel Department, which rendered the following response on April 19, 1993:

> According to our records, Mr. Keeney is paid from TVA monies. Enclosed you will find a copy of a letter from Douglas Lunsford [Manager of Certification and Payroll Audit] which indicates that individuals such as Mr. Keeney are not to be considered as employees under the contracted Merit System maintained by our agency. Mr. Keeney's name should not have been included on any payroll register which our office audits. Furthermore, Mr. Keeney and other individuals whose salaries are funded by TVA should not be included on future payrolls.

(Keeney affidavit exhibit 3.) Accordingly, Keeney's position was not placed under the Morgan County merit system in December of 1993, when the State Personnel Department ceased providing services for MCEMA, because Mr. Keeney was "not ... considered as [an] employee[] under the contracted Merit System maintained by [that] agency." (*Id.* at 6.)

From 1987 through 1991, MCEMA submitted a budget to TVA, which included Keeney's salary as a line item. (*Id.*) Annual increases in his salary during those years were based on the cost of living increase received by state employees, as well as a merit increase between five and eight percent which was agreed upon by Keeney and MCEMA's director, Howard Proctor. (*Id.* at 6-7.) From 1992 through 1994, Keeney's salary increased annually based on the consumer price index in accordance with a funding agreement between the State of Alabama and TVA. (*Id.*) The funding agreement for fiscal

4

years 1995 through 1998 made no similar provision for cost of living increases; therefore, Keeney and MCEMA director Howard Proctor agreed that Keeney would receive a five percent salary increase in each of those years. (*Id.* at 7.) Even so, Keeney received an eight percent increase in 1995, because state employees received a cost of living increase in that amount. (*Id.* at 7-8.) In 1996, Keeney received the agreed upon five percent raise. (*Id.* at 8.)

The following is a comparison of the salaries of Keeney and plaintiff, stated as an hourly wage rate:

| **Year** | **Plaintiff** | **Keeney** |
|---|---|---|
| 1987 | $8.87 | $7.62 |
| 1988 | $9.39 | $8.36/$9.45 |
| 1989 | $9.67 | $10.17 |
| 1990 | $10.95 | $11.48 |
| 1991 | $11.21 | $12.02 |
| 1992 | $11.48 | $12.39 |
| 1993 | $11.48 | $12.77 |
| 1994 | $12.12 | $13.79 |
| 1995 | $12.91 | $14.50 |

(Plaintiff's affidavit at 3.) Keeney retired from his local emergency planner position on August 16, 1996 (Dockery affidavit at 6), but plaintiff remains employed as deputy director of MCEMA. (Plaintiff's affidavit at 1.)

## II. DISCUSSION

Plaintiff bears the burden of proving, by a preponderance of the evidence, that defendant intentionally discriminated against her because of gender. That can be done either by direct or circumstantial evidence. When plaintiff's evidence is circumstantial in nature, as is the case here, the Supreme Court

5

has developed a three stage framework for focusing the inquiry. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Plaintiff must first establish a *prima facie* case of gender-based wage discrimination, which requires proof demonstrating that plaintiff "is female and that the job she occupied was similar to higher paying jobs occupied by males." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). If plaintiff proves a *prima facie* case, thereby giving rise to a presumption of intentional discrimination on the basis of gender, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption through articulation of legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to demonstrate that defendant's stated reasons are not true, but merely pretexts for an unlawful, discriminatory animus. *Id*.

**A.   Plaintiff's Prima Facie Case**

Defendant argues that plaintiff cannot establish a *prima facie* case, because she cannot demonstrate "the job she occupied was <u>similar</u> to higher paying jobs occupied by males." *Miranda*, 975 F.2d at 1529 (emphasis supplied). Defendant relies upon

6

plaintiff's testimony that her job differed in "many ways" from Keeney's (plaintiff's deposition at 96-97), and upon the differences in the methods for establishing the salary for each position produced by the disparate funding sources previously discussed.

"This circuit has ruled that Title VII has a 'relaxed standard of similarity between male and female-occupied jobs.'" *EEOC v. Reichold*, 988 F.2d 1564, 1570 (11th Cir. 1993)(quoting *Miranda*, 975 F.2d at 1526). A *prima facie* case can be established merely by showing that plaintiff "shared the same type of tasks" as a male comparator. *See Miranda*, 975 F.2d at 1529.

Plaintiff presents two pages of affidavit testimony detailing her duties as deputy director of MCEMA which demonstrate, among other things, that she was responsible for: "developing, coordinating, and maintaining a county-wide all-hazard Emergency Operations Plan"; "responding to all incidents requiring activation of the EOC[2] and/or on-scene coordination and support"; "coordinating the provision of resources in the community to support operations associated with natural and technological disasters and national security emergencies"; "preparing for, responding to, and recovering from any type of disaster in order to save lives and protect property"; "providing assistance during radiological exercises"; and, "initiating action on damage

---

[2] Plaintiff does not identify the "EOC."

7

assessment after a major disaster, and coordinating damage assessment teams." (Plaintiff's affidavit at 1-2.)

In comparison, "[t]he primary purpose of [the Local Emergency Planner position occupied by Keeney] was to perform off-site planning in the event of a nuclear release from Browns Ferry Nuclear Plant." (Keeney affidavit at 1-2.) That limited description demonstrates that Mary Anne Sims and Fred Keeney generally "shared the same type of tasks," even if their specific responsibilities were dissimilar. Defendant does not dispute that it paid Keeney more than Sims; therefore, plaintiff has established a *prima facie* case.

**B.   Defendant's Legitimate Nondiscriminatory Reason**

According to defendant, Keeney was paid more than plaintiff because his position was funded solely by the TVA, and it was not subject to the same fiscal constraints as plaintiff's position.

> [Plaintiff's] salary was funded by monies provided by the State of Alabama (which included federal funds), Morgan County, Alabama, and the City of Decatur, Alabama. Consequently, the amount of [plaintiff's] salary was also limited by the funding available from those sources.
>
> . . .
>
> Unlike [plaintiff's] salary, the salary for the Local Emergency Planner position was funded entirely from funds provided by the TVA. Other than to the extent TVA funds were funneled through the State to Morgan County as described above, no State funds, Morgan County, Alabama funds, or City of Decatur, Alabama, funds were used to pay the salary of the Local Emergency Planner. As a result, the salary of the Local Emergency Planner was limited by the amount of funding which the TVA would provide, rather than by funding available from Morgan County, the City of Decatur and the State.
>
> . . .

8

> Because Keeney's salary was paid entirely from funds provided by the TVA, the amount of his salary was limited by the amount of funding which the TVA would provide rather than by the provisions of the State merit system and pay plan. As such, Keeney's salary was not limited and determined by the same factors which limited and determined [plaintiff's] salary.
>
> . . .
>
> Because Keeney's position, Local Emergency Planner, was not considered to be under the State merit system, the position was not placed under the Morgan County merit system in 1993. One example of the differences in the way that [plaintiff's] salary and Keeney's salary were determined is that in 1995, Morgan County employees received a special "longevity bonus" based upon the number of years of employment. Sims received that bonus, but Keeney did not.

(Dockery[3] affidavit at 3-5.) That is sufficient evidence to fulfill defendant's burden of articulating a legitimate, nondiscriminatory reason for the contested pay differential.

C.  **Plaintiff's Evidence of Pretext**

Accordingly, plaintiff must "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). She fails to meet that burden.

Mary Anne Sims does not claim that Keeney's salary was disproportionate to the value of the work he performed. Indeed,

---

[3]Willa Dockery is the county administrator for Morgan County, Alabama. (Dockery affidavit at 1.) She is "familiar with the payroll systems of Morgan County, Alabama, and the merit systems of both the State of Alabama and Morgan County, Alabama." (*Id.*)

9

the specter of a nuclear release from Browns Ferry Nuclear Plant looms over all of North Alabama and Southern Tennessee, not just Morgan County. If such an accident occurred, Fred Keeney's knowledge and experience would have been highly valued, and certainly worth the salary he received.

Even so, plaintiff baselessly argues that defendant should have limited Keeney's salary to an amount commensurate with her pay. According to plaintiff, "[t]he County had the unfettered discretion to pay Mr. Keeney what they wanted and could have paid him on the same scale as they paid me, but chose not to because he is a male." (Plaintiff's affidavit at 5.) Furthermore, "the defendant had the opportunity and the ability to keep Keeney's salary at a level less than, or, at the very least, equal to that of [plaintiff], but chose not to do so." (Plaintiff's brief at 21.) Those assertions do not create a genuine issue of material fact, and the following discussion demonstrates that there is no evidence that the difference in funding was not the "real reason" for the difference in pay.

1. **TVA's belief that Keeney was subject to a merit system**[4]

Plaintiff presents evidence demonstrating that TVA believed the local emergency planner position was subject to county merit systems. In a letter dated August 31, 1992, Dave White, Chief of

---

[4]Plaintiff also attempts to cast doubt upon the veracity of defendant's funding argument by claiming that defendant originally considered Keeney subject to the state merit system. (Plaintiff's brief at 19.) Nevertheless, plaintiff points to no _admissible_ evidence in support of that argument, and fails to meet her burden in opposing summary judgment.

10

the Plans Division of the State of Alabama Emergency Management
Agency, questioned TVA about salaries paid to local emergency
planners:

> Past precedent has indicated ... that so long as the
> authorized personnel merit system in a county is
> consistent within itself, (TVA related positions are not
> financially inflated), that the intent of the contract
> [between the State of Alabama and TVA] has been met and
> the actual scale is an internal county matter. If this
> interpretation of TVA's policy regarding county personnel
> merit systems is accurate, please confirm to the AEMA in
> writing as soon as practical.

(Plaintiff's affidavit exhibit 4.)  On September 8, 1992, R. J.
Kitts, Manager of Emergency Preparedness for the TVA, responded:

> We are of the opinion that your stated interpretation of
> the TVA's policy is accurate. Our philosophy and the
> historical precedent has been that as long as the
> authorized personnel merit system representing an
> employee is consistent with itself and that the TVA-
> related positions are not financially inflated, the
> salary scale is an internal matter.

(*Id.* exhibit 5.)  That evidence merely demonstrates that TVA
mistakenly assumed at one time that the local emergency planner
position was subject to county merit systems. It does nothing to
rebut defendant's claim that it, nevertheless, did **not** subject
Keeney to Morgan County's merit system, and that Keeney was paid
more because TVA approved a budget which included his salary as one
of the items within that budget. Plaintiff presents hearsay
testimony that "TVA **assumed** that the Morgan County Local Emergency
Planner, Mr. Keeney, was receiving his raises based on the County
Merit System" (plaintiff's affidavit at 4 (attributing that
assumption to TVA employee Francis Daniel)(emphasis supplied)), but
that evidence simply reinforces the fact that TVA assumed (**but did**

11

<u>not require</u>) that local emergency planners were subject to county merit systems.

### 2. Hearsay statements of Paulette Williams

Plaintiff presents the following hearsay in her affidavit opposing summary judgment:

> I have been informed by Paulette Williams, the North Alabama Coordinator for the State of Alabama Emergency Management Agency, that in 1993, the contract [for state management of MCEMA salaries] was terminated and the employees of the MCEMA then were subject to the pay scale of Morgan County's Merit System. Further, she has confirmed my long standing knowledge and understanding that all employees of the MCEMA, including Fred Keeney, were considered Morgan County employees, never state employees. Additionally, Local Emergency Planners such as Mr. Keeney, whose salaries are paid solely by TVA funds, are still County employees subject to the same pay system as other County employees. Ms. Williams confirmed that my position of Deputy Director is considered to be over that of Mr. Keeney's Local Emergency Planner.

(Plaintiff's affidavit at 3-4.) That evidence merely confirms that Keeney was a county employee, which defendant readily admits. The court will not consider the alleged statement that "Local Emergency Planners such as Mr. Keeney, whose salaries are paid solely by TVA funds, are still County employees subject to the same pay system as other County employees," because that statement is not directly attributed to Williams. Even if she made the alleged statement, there is no evidence that Williams (a state employee) is competent to testify about application of the Morgan County merit system.

### III. CONCLUSION

For the foregoing reasons, the court concludes that plaintiff has not fulfilled her burden of producing evidence demonstrating the difference in funding is not the "real reason" for the

12

difference in pay between herself and Fred Keeney. *Combs v. Plantation Patterns*, 106 F.3d at 1528. Accordingly, defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will issue contemporaneously herewith.

**DONE** this the 15th day of December, 1997.

_____
United States District Judge